FIRST NAT. BANK OF MERIDIAN *v.* COMMISSIONERS OF LAKE
CORMORANT DRAINAGE DIST.

(Division A.   May 1, 1933.)

[147 So. 807.   No. 30296.]

Baskin, Wilbourn & Miller, of Meridian, for appellant.

**Dulaney & Bell,** of Tunica, for appellant, Planters Bank of Tunica.

**Holmes & Bowdre,** of Hernando, for appellee, Lake Cormorant Drainage District.

358

Herbert Holmes, of Senatobia, and J. B. Daggett, of Marianna, Arkansas, for appellee, Waltke Investment Company.

**Burch, Minor & McKay,** of Memphis, Tenn., for appel-
lees, Thomas and Minor.

Argued orally by **R. E. Wilbourn,** for appellant, and by **J. B. Daggett, F. C. Holmes, H. D. Minor,** and **Herbert Holmes,** for appellees.

**Cook, J.,** delivered the opinion of the court.

The appellees, Commissioners of Lake Cormorant Drainage District, which is located partly in DeSoto county and partly in Tunica county, and is being administered in the chancery court of DeSoto county, filed a bill in the nature of interpleader against the owners and holders of all outstanding bonds of the district, setting up in substance the organization of the district, the va-

rious bond issues, assessed benefits, and tax levies of the district, and setting up that the 1931 maturities on its bonds and interest coupons aggregated sixty-eight thousand, one hundred thirty-seven dollars and sixty cents, but that, as a result of the falling off of taxes collected for that year, the district had on hand with its treasurer only a little in excess of fifty thousand dollars, which was only sufficient to pay about seventy-five per cent. of the said maturities for that year; that there were two issues of bonds outstanding, and that there was a controversy between the owners and holders of the respective issues as to which was entitled to priority. The prayer of the bill was that all holders of bonds of the district be made parties defendant and required to answer and show what bonds each held, and to set forth their respective claims and contentions as holders of such bonds in and to the funds available for distribution; that the court should direct the commissioners as to payments and disbursement of the funds on hand realized from collections under the 1930 tax levy; that the court would adjudge the rights, equities, and priorities of all bondholders not only with reference to the funds on hand, but also with reference to unappropriated benefits of the district, and any funds that might thereafter be realized from the redemption of lands forfeited for taxes; and that the court would grant all such further orders and decrees as might be for the best interests of the defendants in accordance with legal rights and equities, and at the same time conserve the benefits of the district.

Process was issued and publication made and numerous bondholders appeared and filed answers, and upon final hearing the chancellor rendered a decree holding that all outstanding bonds of the district, both the first and third issues, were on a parity so far as the benefits of the district were concerned, and that neither had any priority as against the other, and that out of the funds on hand in the treasury of the district there should be paid seventy-five per cent. of such bonds as matured on March

1, 1931, and all interest coupons maturing as of March 1 and September 1, 1931. From this decree the First National Bank of Meridian, the holder and owner of twelve thousand ·dollars of the bonds of the first issue, prosecuted this appeal.

The facts, briefly stated, are as follows: The district was organized in 1919 under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914. An assessment of benefits was duly made, filed, and approved, showing a total of one million, one hundred eighty-nine thousand, four hundred dollars of benefits. Thereupon the district issued and sold, as against this assessment, five hundred eighty-five thousand dollars of its bonds. Approximately one hundred forty-two thousand dollars of the bonds have been paid and retired, leaving outstanding of this first issue approximately four hundred forty-three thousand dollars. In 1912, under the authority of the last paragraph of section 7 of chapter 269, Laws of 1914, the district made an additional assessment of benefits. This new assessment reflected a horizontal raise of fifty per cent. of the original assessment, with the exception of three pieces of property that were not changed. From this new assessment an appeal was taken to this court, where the assessment was approved and affirmed in the case styled White v. Lake Cormorant Drainage District and reported in 130 Miss. 351, 94 So. 235. Thereafter the district authorized an additional issue of one hundred fifty thousand dollars of bonds on faith of the additional assessment of benefits, but actually only one hundred ten thousand dollars of bonds were issued and sold, and all of this issue is still outstanding. Between the first and third issues there was an issue of forty thousand dollars of bonds, but that issue has been fully paid. The additional assessment of benefits amounted to five hundred fifty-four thousand, two hundred ninety-seven dollars, making the total assessment of benefits one million, seven hundred forty-three thousand, nine hundred sixty-seven dollars, thus leaving the

sum of five hundred fifty-four thousand, two hundred ninety-seven dollars of the assessed benefits of the district which had not been appropriated for any purpose, and against which no tax had been levied or made, and which was available security for the issuance of additional bonds, and against which one hundred ten thousand dollars of bonds were issued and sold.

The question presented for decision by this appeal is whether or not the first and third issues of bonds are on a parity, neither having any priority of lien, and for the proper consideration of this question it will be advantageous to set forth certain applicable statutory provisions, and certain provisions of the decrees of the court authorizing the two issues of bonds.

The appellee drainage district was organized under provisions of chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, and section 1 of said chapter 269, Laws of 1914, provides, among other things, that "upon the organization of said drainage district, it shall in its corporate name by its commissioners, henceforth have power to contract and be contracted with, to sue and to be sued, to plead and be impleaded, and to do and perform in the name of such district all such acts and things for the accomplishment of the purposes for which it was organized;" while section 4 of said act provides that the commissioners of a drainage district, when appointed, "shall constitute, and are hereby declared to be a body politic and corporate by the name and style of the name selected, . . ." and "they may from time to time make such by-laws, rules and regulations and alter and change the same as they may deem proper, not inconsistent with this act and the laws of this State, for the purpose of carrying into effect the object of their incorporation."

Section 7 of said chapter 269, Laws of 1914, provides in detail for the assessment of benefits on the lands of a district, and for the preparation of an assessment roll of such benefits, and further provides that "the assess-

ment roll, so prepared and filed by the commissioners, when approved by the board of supervisors, shall stand as a final assessment of benefits upon the lands of the said district and no new assessment roll shall be required unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than those assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district.''

Section 8 of chapter 269, Laws of 1914, reads, in part, as follows: ''The board of supervisors shall at the same time that the assessment of benefits is filed, or at any subsequent time, when called upon by the board of commissioners of the district so to do, enter upon its minutes an order which shall have all the force of a judgment providing that there shall be assessed upon the real property of the district a special assessment, or levy, to pay the estimated cost of the improvement, with not less than ten per cent. (10 per cent.) added for unforeseen contingencies, the amount to be assessed upon each tract of land included within the district shall be such part of the estimated cost of the improvements as the assessment of benefits against such tract bears to the assessment of benefits against all the real property in the district. . . . The assessment or assessments so levied shall be a lien on all of the real property of the district from the time that the same is levied by the board of supervisors in an amount not to exceed the total amount of estimated benefits on all the real property in the district, and shall be entitled to preference to all demands, executions; encumbrances or liens whatsoever, and shall continue until such assessment, with any penalty and costs that may accrue thereon, shall have been paid . . . It shall be the duty of the board of supervisors of each county to make an annual tax levy, at the same time when the county tax levy is made, or at any succeeding regular meeting, in an amount not exceeding the installment of

assessment levied for that year sufficient to meet the obligations of the district.''

Section 11 of chapter 269, Laws of 1914, provides, among other things, the following: ''That for the purpose of constructing and maintaining the ditches and other improvements, provided for under this act, and for carrying out the purposes and provisions of this act, and for paying for the work incident thereto, the said board of commissioners shall have power to borrow money at a rate of interest not exceeding six per cent (6 per cent) per annum to issue its negotiable evidence of indebtedness, or serial bonds, therefor, not exceeding in amount the total amount of benefits assessed against all the real property in the district. . . . And for the prompt payment of said bonds and coupons the board of commissioners may irrevocably pledge the full faith, credit and resources of the district, and all assessments of said district, as provided in section 25 of this act. Said board of commissioners may also issue to the contractor or other persons who do the work, or any part thereof, negotiable evidences of debt of the district, bearing interest at a rate not to exceed six per cent (6 per cent) per annum, secured in like manner as the bonds above provided for.''

Section 14 of chapter 269, Laws of 1914, reads as follows: ''That all bonds and evidences of indebtedness issued by the commissioners under the terms of this act shall be secured by a lien on all lands, and railroads subject to taxation under this act, in an amount not to exceed the amount of benefits assessed against such lands and railroads, and the board of commissioners shall see to it that an assessment is levied annually, and collected under the provisions of this act, so long as it may be necessary for the payment of any bonds issued or obligations contracted under its authority, together with the interest thereon.''

Section 15 of chapter 269, Laws of 1914, provides: ''That to the payment of both principal and interest of

the bonds and other negotiable evidences of debt to be issued under the provisions of this act, the entire revenues of the district, from any and all sources and all real estate and railroads subject to taxation in the district are by this act pledged, in an amount not to exceed the amount of betterments assessed against said lands and railroads; and the board of commissioners is hereby required to set aside annually from the first revenues collected from any source whatever, a sufficient amount to secure and pay the interest on said bonds and evidences of indebtedness and a sinking fund for their ultimate retirement, if a sinking fund is provided for.''

The decree of the chancery court, providing for the first issue of bonds of five hundred eighty-five thousand dollars against the then total assessed benefits of one million, one hundred eighty-nine thousand, four hundred dollars, contained a statement showing the date of the bonds, the interest thereon to maturity, the proportion of the tax levy covering ten per cent contingencies, the total tax required in each year, and the total levy for each year, and contained the following recitations:

''It is therefore ordered, considered, adjudged and decreed, that the plan adopted by said Commissioners and shown in said tabulated statement, by which it appears that for each year of the life of the bonds of said District that it is necessary to put into collection the tax required the year previous to the time when said tax will be needed, is hereby ordered approved. And it is further ordered, considered, adjudged and decreed that said taxes aggregating the sum of one million, one hundred forty-six thousand, five hundred eighty-one dollars and sixty cents hereinbefore assessed shall be divided into twenty installments and that the said installments shall be due and payable as shown by said Tabulated Statement. . . .

''It is further ordered that for each successive year after the year 1920 (for which the tax levy of three and three-tenths per cent has by this order been made), and

ending with the year 1939, there shall be levied in due time, manner and season, the several respective sums set opposite the several years in the column entitled, 'Total Levy for Each Year,' and thereunto the full faith and credit of the District is hereby irrevocably pledged. . . .

"It is further ordered, adjudged and decreed that, in order to meet the interest upon said bonds and pay the principal thereof as it matures that there is hereby appropriated for that purpose and set aside out of the first moneys received from the collection of said installments of the said tax assessed against the real property, including all lands within said Drainage District, a sum sufficient to pay the interest and principal of the bonds and interest becoming due during the year in which that Installment of said tax is due and payable in accordance with and as shown in the Tabulated Statement hereinbefore set out, or any bonds and coupons that may have already matured and yet remaining unpaid. It is further ordered, adjudged and decreed that no part of the funds arising from the collection of the said Installment of taxes shall be applied or used for any other purpose than the payment of interest and principal of said bonds until there has been deposited with the Depository of said District, if there be one selected according to law; and if no such Depository then with the Treasurer of said District an amount sufficient to pay the interest and principal maturing the year in which the installment is due, as well as all other bonds and coupons already matured and remaining unpaid. . . .

"It is further ordered, adjudged and decreed that in case funds are required or needed by the said Drainage District for any purpose other than the payment of the interest and principal of said bonds (except for administration and maintenance as hereinbefore provided), said funds shall be raised by an additional tax levy, and in no event shall there be any levy or levies that will in any way or manner or to any extent impair the security of said bonds which are and at all times shall be a first

lien upon the assessment of benefits and the taxes levied within said Drainage District."

Each of the bonds recited on its face that it was "issued under the authority of chapter 195, Laws of Mississippi, 1912, and amendments thereto, in anticipation of the collection of special assessments upon the lands in said District, levied according to law, for the purpose of raising money for the construction of ditches, levees, and drains, and the maintenance thereof, within said Drainage District, pursuant to the order of the chancery court of DeSoto county, Mississippi, and is issued in conformity with and under the authority of the laws of the state of Mississippi."

On June 1, 1922, on a petition setting out that a new assessment of benefits was necessary to raise funds to complete the proposed improvements of the district, and that by reason of such improvements, when completed, the lands of the district would receive additional and other benefits to those found by the first assessment, and furthermore that it was necessary to complete the work planned and commenced in order to maintain and preserve the improvements already made, the court fixed and approved an increased assessment of five hundred fifty-four thousand, two hundred ninety-seven dollars, which amount consolidated with the first assessment made an aggregate assessment of one million, seven hundred forty-three thousand, six hundred ninety-seven dollars. After this increased and consolidated assessment had been, on appeal, approved and affirmed by this court, White v. Lake Cormorant Drainage District, supra. the commissioners of the district filed a petition setting forth that the funds of the district had been exhausted, and that it was necessary to issue and sell a third installment of bonds for the purpose of completing the improvements of the district, and praying the court to authorize the issuance of one hundred fifty thousand dollars in additional bonds. Upon this petition the court granted a decree reciting that the proceeds of the first and sec-

ond series of bonds had been exhausted, and that approximately one hundred fifty thousand dollars more was needed in order to realize funds with which to prosecute and complete the construction work of said district. The decree also recited the confirmation of the new assessment of benefits in an aggregate amount of one million, seven hundred forty-three thousand, six hundred ninety-seven dollars by the decree of June 1, 1922, and the affirmance of this decree by the Supreme Court, and further provides as follows: "And it appearing that for the payment of the original bond issue of five hundred eighty-five thousand dollars of the district heretofore issued and sold, together with interest and ten per cent for contingencies, that there has been made a levy and assessment of taxes against the benefits of the district in the total amount of one million, one hundred forty-six thousand, five hundred eighty-one dollars and sixty cents. That for the payment of the second installment of bonds amounting to forty thousand dollars together with interest and ten per cent for unforeseen contingencies there has been assessed and levied a tax against the benefits of said district of forty-nine thousand, fifty dollars and sixty-seven cents, making a total levy for both of said bond issues in the aggregate sum of one million, one hundred ninety-five thousand, six hundred thirty-two dollars and twenty-seven cents, which leaves five hundred forty-eight thousand, sixty-four dollars and seventy-three cents of the benefits of said district which have not been appropriated for any purpose and against which no tax has been levied or made, and which is now an available security for the issuance of a third installment of bonds. . . .

"And it further appearing that the issuance of a third installment of bonds and the sale thereof is necessary and legal for the purpose of realizing funds with which to complete the improvements of said district, and that the completion of said improvements, will make the property of the district not only first class security for the

present bond issue, but will make the security even better and more ample for the payment of the former issues.

"It is therefore ordered, adjudged and decreed that the said board of commissioners of the Lake Cormorant Drainage District of DeSoto and Tunica counties be and it is hereby empowered, directed and ordered to issue a third installment of the bonds of said district in the sum of one hundred fifty thousand dollars in the denominations of one thousand dollars each, all of which said bonds to be numbered from one (1) to one hundred and fifty (150) inclusive, and to secure the same by a pledge of the said unappropriated revenues of the said district. . . .

"And it is further ordered that there be and is now levied and assessed against the real property of said district and against the unappropriated benefits thereof a tax sufficient to produce the sum of three hundred sixty-four thousand, four hundred thirty-two dollars and fifty-eight cents, the same being sufficient to cover the amount of said bond issue of one hundred fifty thousand dollars including the interest thereon plus ten per cent for unforeseen contingencies; the said tax to be paid by the real property in said district in proportion to the amount of the assessment of benefits thereon. . . .

"It is further ordered, adjudged and decreed that in order to meet the interest upon said bonds and pay the principal thereof as it matures, that there is hereby appropriated for that purpose and set aside out of the first moneys received from the collection of said installments of said tax assessed against the real property, including all lands within said drainage district, a sum sufficient to pay the interest and principal of the bonds and interest becoming due during the year in which that installment of said tax is due and payable, in accordance with and as shown in the Tabulated Statement hereinbefore set out, or any bonds and coupons that may have already matured and yet remaining unpaid. It is further ordered, adjudged and decreed that no part of the funds arising

from the collection of said installments of tax shall be applied or used for any other purpose other than the payment of interest and principal of said bonds until there has been deposited with the depository of said district, if there be one selected according to law; and if no such depository then with the treasurer of said district, an amount sufficient to pay the interest and principal maturing the year in which the installment is due, as well as all other bonds and coupons already matured and unpaid.''

On the face of each of the bonds of the third issue there appeared the same recitation as to the authority under which the bonds were issued, and the purposes for which issued, as appeared on the face of the first issue of bonds, as hereinbefore quoted.

By chapter 295, Laws of 1922, the Legislature enacted a general statute validating and confirming all proceedings theretofore taken by the commissioners of any drainage district in this state, or by any chancery court in the state, providing for the issuance of any and all bonds, notes, certificates, loan warrants, or other obligations of any drainage district in the state, and ratifying, validating, and confirming all such bonds, etc., ''regardless of the law under which the proceedings for which the issuance of said bonds, notes, certificates, loan warrants or other obligations were taken, and notwithstanding any defect or omission or irregularity in the proceedings, providing for the issuance of same, or the failure to comply with any law or part of law in reference thereto,'' etc.

We have set forth somewhat at length the statutory provisions, and the provisions of the decrees of the chancery court authorizing the respective issues of bonds by this district, in order that the provisions thereof which appear to have some bearing upon the question of priority of liens may be read in consecutive order. Each of the two issues or installments of bonds were issued under the same statutory authority for the construction

and complete execution of an entire plan of drainage or reclamation. From the record the inference may be drawn that it was contemplated that the first issue of bonds would provide sufficient funds for the completion of the contemplated and planned improvements, but this issue, together with the small second issue of bonds, which practically exhausted the right to issue bonds or incur indebtedness against the benefits first assessed, proved insufficient for the contemplated purposes. The security of the then bondholders was against an assessment of benefits of a district with incompleted, and necessarily ineffective, improvements which would impair such security. No further bonds could be issued against the benefits then assessed, and it was determined and adjudged that for the purpose of raising additional money with which to complete the improvements of the district it was necessary to assess additional benefits against which additional bonds might be issued. This additional assessment was made and approved and consolidated with the first assessment, and against this additional and increased assessment additional bonds were issued.

These additional bonds were issued under the same statutory authority and for the same purpose as the first, that is, the construction and completion of one entire and complete plan of improvements for the drainage and reclamation of the lands of the entire district. We find nothing in the statute which requires or authorizes the first bonds issued thereunder for the construction of improvements of the district to have priority of lien over a second or third series or installments issued under the same statute, against additional benefits assessed for the same purpose, and for the completion of the same improvements as the first issue. In the absence of statutory requirement or authority we see no basis for holding that those furnishing funds for part of the work or construction of improvements, which the statute contemplates should be one completed whole, should have priority over those who furnished additional funds re-

quired to complete it, when such additional funds are provided by the issuance of securities against benefits not assessed when the first securities were sold. The proportion that the third issue of bonds bore to the amount of additional benefits assessed was much less than the proportion of the first issue to the amount of benefits first assessed, and upon which the first bonds were issued and sold, and it would appear that after the issuance of the third series there was still left an increased margin of security for the first issue over that existing prior to the assessment of additional benefits. We do not think the statute authorized or created any priority as between successive series or installments of bonds issued against the properly assessed benefits, for the purpose of completing the originally planned improvements of the district, or that the decree ordering the issuance and sale of the first issue had that legal effect, and consequently the validating act of 1922 could have no such effect.

The exact point does not appear to have been heretofore decided by this court, but in support of the conclusion we have reached there are several cases from other jurisdictions which were decided upon facts and statutory provisions very similar to those here involved. In the case of Hoehler v. W. B. Worthen Co., 154 Ark. 444, 243 S. W. 822, the court had under consideration provisions of a statute for pledging the faith, credit, and resources and property of a road district, and creating a lien on all land and real estate of the district, which are similar in language and legal effect to the provisions of sections 8 and 11 of chapter 269, Mississippi Laws of 1914, upon that point, and the court there held, as set forth in the syllabus, as follows: "Notwithstanding bonds issued under authority of a special statute creating a road improvement district of Pulaski county (Acts 1909, p. 1151) were issued and sold in two allotments, all the bonds issued were within the authority conferred, and amounted to a single issue, even though successive in point of time, and no priority was created in favor of

the holders of the first allotment, and the fund in the hands of a receiver appointed on default in judgment under the statute should be distributed pro rata on all matured bonds.''

In the case of Krietmeyer v. Hemphill (C. C. A.), 19 F. (2d) 513, this question was considered under a statute of the state of Florida authorizing the creation and operation of drainage districts, which is very similar to, and in most essential respects practically identical with, the act which we have under consideration, and the United States Circuit Court of Appeals there reversed the decree of a district court of Florida, and held that a first issue of bonds was not entitled to priority over bonds subsequently issued for the purpose of completing the planned improvements of the district.

In McNear v. Little Red River Levee District No. 2 (C. C. A.), 293 F. 717, 720, the court had under consideration a statutory provision of the state of Arkansas conferring power upon a levee district to "issue bonds in a sum not to exceed the estimated benefits which should accrue to the lands in the district by reason of the reclamation work contemplated," and held that where the aggregate amount of bonds issued did not exceed the total benefits to accrue, bonds of the second and third issue stand on a parity as to seniority with bonds of the first issue, and said that the only conclusion sustainable was that, "since the work was to be done, and since the levee district had the statutory power to issue enough bonds with which to do it, so long as such amount so issued should not exceed in amount the estimated betterments to accrue from doing it, all subsequent bondholders were saddled with notice of the statutory power residual in the district, and took with notice of such power and of the probability of its exercise, within the statutory limitations.''

The decree of the court below was in accord with the views herein expressed, and it will therefore be affirmed.