CLARK *v.* PEARMAN *et al.*

[88 South. 716, No. 22023.]

</div>

1. DRAINS. *Bond issue of district in excess of assessed betterments held void.*

   Where a drainage district is organized under chapter 195, Laws of 1912, and amendments thereto (sections 4450 to 4483, inclusive, Hemingway's Code), under section 25 thereof (section 4471, Hemingway's Code), which, among other things, provides that for the payment of the principal and interest of the bonds or other indebtedness of such district the entire revenues of such district are pledged, "in an amount not to exceed the amount of betterment assessed against said lands and railroads," and issues the bonds of said district, the principal and interest of which exceed in amount the assessed betterments of the district, such bonds are unauthorized and void.

   126 Miss.—22.

2. DRAINS. *District not authorized to incur indebtedness, principal and interest of which exceeds amount of betterments.*

Under said section 25 (section 4471, Hemingway's Code), the amount of the assessed benefits or betterments against the lands of such district is the measure of the liability of both the lands and the landowners of such district; and no indebtedness of any character whatever can be incurred by such district, the principal and interest of which will exceed the amount of such betterments.

APPEAL from chancery court of Bolivar county.

HON. G. E. WILLIAMS, Chancellor.

Bill by Mrs. E. T. Clark against W. L. Pearman and others for an injunction. Decree for defendants, and complainant appeals. Reversed and remanded.

*Sillers, Clark & Sillers,* for appellant.

The Lead Bayou Drainage District, which was organized as shown by the agreed statement of facts in this record issued twenty-year serial bonds of the district for the payment of work proposed to be done at the time in the district in an amount of one hundred and seventy-five thousand dollars, bearing interest at the rate of six per cent from date, payable semi-annually. These bonds were issued under authority of chapter 195 of the Laws of Mississippi of 1912, and the amendments thereto.

The board of commissioners of the said drainage district now propose to issue bonds for an additional seventy-five thousand dollars under the provisions of section 4468 of Hemingway's Code, for the purpose of perfecting the drainage scheme of this district and adding new drains in the district, and have levied a tax, or attempted to levy a tax, on the original assessed benefits. Section 4470 of Hemingway's Code provides as follows: "That all bonds and evidences of indebtedness issued by the commissioners under the terms of this act shall be secured by a lien on all lands and railroads subject to taxation under this act, in amount not to exceed the amount of benefits assessed

against such lands and railroads," and further provides that a tax shall be levied and collected annually so long as is necessary for the payment of any bonds issued or obligations contracted under its authority, together with interest thereon.

Section 4459, of Hemingway's Code provides that the commissioners may borrow money and may issue their serial bonds therefor not exceeding in amount the total amount of benefits assessed against the real property in the district, and provides that the said bonds shall bear interest at a rate not exceeding six per cent. Just here we call the court's attention that under another system of drainage provided by Hemingway's Code, as shown by Section 4287, special provision is there made for the installments of the total assessments to draw interest at a rate not exceeding six per cent per annum. The Act of 1912 and its amendments do not make this provision.

Section 4470 cited above providing that the bonds issued by the commissioners shall be a lien on the lands in the district subject to taxation in a sum not to exceed the assessed benefits, and providing that a tax shall be levied and collected so long as necessary for the payment of the bonds and the interest thereon when construed with section 4459, which authorizes the issuance of the bonds in an amount not to exceed the total assessed benefits, show conclusively that the intention of the legislature was that the taxes which could be collected for the payment of these bonds and interest, together with ten per cent added for unforseen contingencies, should not exceed the total amount of assessed benefits.

In the case of *Huston* v. *Mayo*, 82 So. 334, it was held that a drainage district was not a taxing district, and if we correctly understand, that decision was based on the fact that in a drainage district the lands were only liable for the amount of benefits which the commissioners had assessed as accruing to each particular tract of land.

In the case at bar, as shown by the agreed statement of facts, the total amount of assessed benefits, accruing to

the lands in this district was three hundred fifty-four thousand, four hundred sixty-four dollars and fifty-two cents and, as shown by the agreed statement of facts, the total amount of taxes which will be collected on these assessed benefits for the retirement of the bonds, interest and ten per cent added for unforseen contingencies, is the sum of four hundred eighty-nine thousand, four hundred thirty-two dollars and ninety-two cents. In other words, the taxpayers of the district, if this last bond issue and assessment is allowed to stand, would pay one hundred thirty-four thousand, nine hundred sixty-eight dollars and forty cents more than the total amount of benefits which the district proposes to give to their lands.

We think this is directly in the face of the statutes above cited. We think that these statutes conferring upon these commissioners the power to assess these amounts and to install this drainage system must, under all of our decisions, be strictly construed, and the commissioners of this district have no more power than is conferred upon them by a strict construction of the statute under which they operate, and we respectfully submit that the decree of the chancellor dissolving the injunction sued out herein was error, and that the same should be overruled and the injunction be made perpetual by this court.

*Sam Montgomery,* for appellee.

We are confronted here with the simple question as to whether or not the commissioners in issuing their bonds must take into consideration the interest which the bonds will bear as well as the bonded debt itself to determine the limit of the amount of bonds they may issue.

As hereinabove noted, section 4450 gave to each landowner of the district the right to pay his assessment in cash; and if he did, he would be liable for no interest thereon and no bonds could be issued which would be a lien upon his land. If, however, he elects to take advantage of the twenty-year installment payment given him by the

bonds, this then is an accommodation and a benefit to him. In other words, the assessment against his land, by the express language of the statute, constitute a judgment against his land for the amount of the money assessed thereon; and the provisions of the statute allowing the commissioners to issue their serial bonds is simply a provision placed therein for the benefit of the landowner, allowing him to pay this judgment in installments instead of having execution issue against his land for the total amount due in one lump sum as soon as the assessment is confirmed and his time for appeal has elapsed.

Section 2708 of Hemingway's Code, provides: "That all judgments and decrees founded on any contract shall bear interest after the rate of the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at the rate of six per cent per annum." In other words, the statute providing that the board of supervisors shall enter an order on its minutes levying the said assessment on benefits to the lands shall have all the force and effect of a judgment, necessarily carries with' it the interest on such from the time of its rendition until paid. One of the forces of a judgment is that it shall bear interest at the rate of six per cent from the date of its rendition until paid.

Section 4459 authorizes the board of commissioners to borrow money at a rate not exceeding six per cent and to issue its bonds therefor, and this section fixes the maximum amount of indebtedness that the district incurs, and is authorized by this section to issue its negotiable evidence of debt, or bonds to an amount not to exceed the total benefits assessed against the lands. The power to create the debt necessarily carries with it the power to pay the debt and this power may be found in section 2078 cited above requiring all judgments to bear six'per cent interest.

Interest is not to be taken into consideration although expressly reserved in the contract in determining whether a city has reached its debt limit. *Garlson* v. *Helena,* 102

Pac. 39. The indebtedness created by the issuance of bonds is the face value of the bonds.

Interest is not a debt until it is earned and becomes due. Any other construction would lead to the most startling results. There may exist an obligation to pay but the indebtedness as to interest comes into existence each year as the obligation matures and it cannot be said to be a present indebtedness. See *Herman* v. *Occonto,* 86 N. W. 681, and *Ashland* v. *Culbertson,* 4 S. W. 441. In ascertaining the amount of debt of a municipal corporation, future interest, which is not due on the day it becomes necessary to fix the sum of indebtedness, is not to be counted. Unearned interest is not, within the intent and meaning of the constitution a part of the debt of a municipality. See *Epping* v. *The City of Columbus,* 43 S. E. 803.

We earnestly urge on the court that when the board of supervisors entered their order approving and confirming the assessment of benefits against the various tracts of land in the district and entered the order levying the assessment to pay the estimated cost, that order became a judgment which the landowner may pay off instantly or at any time he may see fit before the issuance of bonds; and if he does not do so, he cannot complain of the payment of the legal rate of interest on such judgment during the extension of time given him to pay same.

In view of the fact of the recognized rule of law that interest on bonds is not to be considered as a part of the debt limit of municipal corporations and in view of the fact that the statute expressly provides that the commissioners may issue bonds not exceeding in amount the total benefits assessed against the lands and in view of the fact that the order approving these benefits and levying an assessment therefor is a judgment and under the law bears interest from the date of its rendition, we respectfully submit that the decree of the chancellor dissolving the injunction granted herein was proper and correct and should be sustained by this court.

·ANDERSON, J., delivered the opinion of the court.

This is a bill filed by the appellant in the chancery court of the Second district of Bolivar county against the appellees, as commissioners of the Lead Bayou drainage district of said county, seeking to enjoin the appellees from issuing and selling seventy-five thousand dollars of additional bonds of said drainage district. The appellees answered the bill, and the cause was tried on bill, answer, agreed facts, and motion to dissolve the injunction. There was a decree in favor of the appellees holding the bonds valid and dissolving the injunction, from which appellant prosecutes this appeal.

This cause arises out of the following facts: The Lead Bayou drainage district was organized under chapter 195, Laws of 1912, and amendments thereto (sections 4450 to 4483, inclusive, Hemingway's Code). The benefits assessed against the lands of the district amounted to three hundred fifty-four thousand, four hundred sixty-four dollars and fifty-two cents. The board of supervisors issued the twenty-year six per cent. serial bonds of the district in the sum of one hundred seventy-five thousand dollars. To pay these bonds with interest as it accrues and the ten per cent. added as provided by the statute for unforeseen contingencies, it will take the sum of three hundred thirty-nine thousand, one hundred eighty dollars. It was found, after these bonds had been issued and sold and the work of improvement in the said drainage district had progressed to some extent, that it would be necessary to raise additional funds by the sale of more bonds of said district in order to complete the project. Thereupon the board of supervisors, in accordance with the statute, provided for the issuance of seventy-five thousand dollars of additional twenty-year six per cent. serial bonds of said district. To pay these bonds with accrued interest and the ten per cent. added for unforeseen contingencies, as provided by the statute, it will take the sum of one hundred fifty thousand, two hundred ninety-two dollars and seventy-two cents.

Therefore, to entirely liquidate both issues of bonds, including principal and interest and the ten per cent. levied for unforeseen contingencies, it will take the sum of four hundred eighty-nine thousand, four hundred seventy-two dollars and seventy-one cents, or one hundred thirty-five thousand, eight dollars and nineteen cents more than the benefits assessed against the lands of said district.

The question is whether under the law the bonds of this district could be issued in an amount, including principal and interest and ten per cent. for unforeseen contingencies, in excess of the assessed benefits against the lands of the district. The following provisions of the statutes have a bearing on this question.

In section 9, chapter 195, Laws of 1912, and amendments thereto (Hemingway's Code, section 4450), it is provided, among other things, that the board of supervisors shall enter on their minutes, which shall have the force of a judgment, an order assessing the lands of the district to pay the estimated cost of the improvement with not less than ten per cent. added for unforeseen contingencies, and that the amount assessed against each tract of land in the district shall be such part of the estimated costs of the improvement as the assessment of benefits against such tract bears to the assessment of benefits against all the property in the district; that such assessment shall be paid annually in a sum not exceeding ten per cent. in any one year, and that any landowner who so elects may pay the whole or any part of the amount of the assessment against his land, provided this is done before the bonds of the district are issued; and that the assessment so levied shall be a lien on all of the lands of the district from the time they are made by the board of supervisors "in an amount not to exceed the total amount of the estimated benefits on all of the real property in the district."

And in section 15, chapter 195, Laws of 1912, and amendment thereto (section 4459, Hemingway's Code), there is this provision:

"That for the purpose of constructing and maintaining the ditches and other improvements, provided for under this act, and for carrying out the purposes and provisions of this act and for paying for the work incident thereto, the said board of commissioners shall have power to borrow money at a rate of interest not exceeding six per cent. (6 per cent.) per annum to issue its negotiable evidence of indebtedness, or serial bonds, therefor, *not exceeding in amount the total amount of benefits assessed against all the real property in the district.*"   (Italic ours.)

And in section 24, chapter 195, Laws of 1912 (section 4470, Hemingway's Code), it is provided that the bonds or other evidence of indebtedness issued by the commissioners shall be secured by lien on all the lands in the district "in an amount not to exceed the amount of benefits assessed against such lands and railroads."

And section 25, chapter 195, Laws of 1912 (section 4471, Hemingway's Code), provides as follows:

"That to the payment of both principal and interest of the bonds and other negotiable evidences of debt to be issued under the provisions of this act, the entire revenues of the district, from any and all sources and all real estate and railroads subject to taxation in the district are by this act pledged, in an amount not to exceed the amount of betterments assessed against said lands and railroads; and the board of commissioners is hereby required to set aside annually from the first revenues collected from any source whatever, a sufficient amount to secure and pay the interest on said bonds and evidences of indebtedness and a sinking fund for their ultimate retirement, if a sinking fund is provided for."

There might be some doubt about this question except for the provisions of the above section of the statute last quoted. It simply provides that for the payment of both principal and interest of the bonds of the district as well as other evidences of debt issued under the statute the entire revenues of the district are pledgd *"in an amount not*

*to exceed the amount of betterments assessed against said lands and railroads."* (Italics ours.)

As it appears to the court, there is no escape from the conclusion that under this statute no indebtedness of any character can be incurred, the principal and interest of which will amount to more than the assessed benefits of the district. The plain purpose of the legislature appears to have been to set aside and pledge alone the assessed benefits for the payment of any and all obligations of the district, including principal and interest, beyond which, assessed benefits there was to be no liability whatever of either the district or the landowners thereof. It is true that in the different provisions of the statute above referred to and quoted there appear some inconsistencies, but such defects, if there be such, are for the legislature to remedy, and not the courts.

*Reversed and remanded.*