ANDERSON *v.* McKEE *et al.*

(Division A. March 28, 1938.)

[179 So. 858. No. 33128.]

Maynard, Fitzgerald & Maynard, of Clarksdale, for appellant.

Roberson, Cook & Luckett, of Clarksdale, for appellees.

Argued orally by **G. F. Maynard, Jr.**, for appellant, and by **J. Lake Roberson**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is an appeal from the judgment of the circuit court of Coahoma county denying appellant's petition for the issuance of a writ of mandamus against the appellees as commissioners of the Long Lake Drainage District of said county to compel the commissioners to meet and levy a tax on the assessment of benefits on all lands within the bounds of the district, for the payment of certain bonds held by the appellant, which were issued by the district as originally organized under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, and which district was extended during the year 1929 to include other lands.

Two of the bonds in question, in the sum of $500 each, formed a part of the original bond issue in the sum of $14,000, and bear date of April 1, 1916, due and payable in 1935. The assessment of benefits against the lands in the district as originally organized was slightly in excess of the principal amount of the bond issue plus interest to thereafter accrue and 10 per cent. for unforeseen contingencies, but for some reason the funds collected were insufficient to pay the two bonds of that series held by appellant. The remaining five bonds, in the sum of $500 each, here in question constituted an

additional bond issue in the sum of $2,500, issued on April 1, 1917, two of which became due and payable in 1935 and the remaining three in the year 1936. The aggregate amount of the principal, interest, and the 10 per cent. for unforeseen contingencies of both of these bond issues amounted to $5,454 more than the total assessed benefits of the district, and to that extent the bonds were void under the decision of Clark v. Pearman et al., 126 Miss. 327, 88 So. 716, but were validated so as to constitute legal obligations of the district in its capacity as a corporate entity under and by virtue of chapter 295, Laws of 1922, chapter 225, Laws of 1924, and chapter 280, Laws of 1926. However, the said validating acts did not undertake to provide any specific remedy to enforce the payment thereof or to create a lien on the lands of the district for that purpose.

It was held in the case of Anderson v. Robins, 161 Miss. 604, 137 So. 476, 478, that "the Legislature had full power, under the Constitution, to authorize drainage districts to contract debts prior to the assessment of benefits from the proposed drainage scheme to the land of the district, *provided liability therefor is not imposed on the land, or its owners, in excess of the benefits accruing to the land.*" (Italics ours.) It follows from this that the Legislature could authorize drainage districts to contract debts subsequent to the assessment of benefits, *provided liability therefor is not imposed on the land or its owners, in excess of the benefits accruing to the land.* Where the drainage commissioners were without authority in the first instance to issue any bonds at all in excess of the benefits assessed against the land, as was true in regard to the bonds here in question, the effect of these curative statutes was merely to render such bonds a legal obligation of the district in its corporate capacity enforceable only against such funds or other assets as the district might possess, but did not create a lien on the land. There exists quite a

difference between the effect which a validating statute has on the rights of the owners of the bonds of a drainage district and the effect of such a statute on the bonds of many other political subdivisions of the state in so far as they undertake to grant a remedy against the lands thereof, in that the lien on the land in a drainage district and the right to levy a tax for the payment thereof must be predicated upon an assessment of benefits at least equal to the indebtedness contracted.

At the time of the issuance of the bonds in the sum of $2,500, on April 1, 1917, it was recited in the resolution adopted by the commissioners and in the minutes of the board of supervisors, that the original bond issue of $14,000 was insufficient to pay for the improvements contemplated, or to complete the work begun in that behalf, and we must assume that the proceeds of the second bond issue were used in the work of completing the drainage system of the district as originally organized.

In the year 1929 the boundaries of the district were duly and legally extended so as to include certain other lands lying adjacent to the district as originally organized. The board of supervisors then authorized the issuance by the drainage commissioners of a further bond issue in the sum of $60,000 for the purpose of cleaning out, deepening, and widening the drainage ditches in the original district, and extending the drainage system over and across the lands added to such district. In extending the district and providing for the issuance of the $60,000 of additional bonds, there was a new assessment roll of benefits made on all the lands throughout the entire district as extended, based upon the estimated benefits that would accrue to the entire territory by reason of the cleaning out, deepening, and widening of the ditches theretofore made in the original district and in extending the system over and across the added territory, and benefits were assessed

against the property of each land owner in excess of all indebtedness represented by the bonds of the appellant and the indebtedness represented by the $60,000 bond issue thereafter sold, after due notice in that behalf, but no additional assessment of benefits was ever made at any time on account of the improvements made from the proceeds of appellant's bonds on the lands embraced in the original district, on which a tax levy could be made to take care of the same, and neither was there any assessment of benefits made on the lands of the district as extended for that specific purpose. It is true that the board of supervisors, by an order entered upon its minutes at the time of extending and enlarging the district, recited that the added territory, as well as the original territory, would be benefited by the cleaning out, deepening, and widening of the ditches in the original district proposed to be paid for out of the additional bond issue of $60,000, and that the work contemplated under the said additional bond issue would likewise benefit the lands in the original district, but this did not constitute an adjudication that the added territory would be benefited by the improvements made several years prior thereto out of the proceeds of the first two bond issues, and neither did such recital constitute an assessment of additional benefits against any of the lands in the entire district for the purpose of paying for the improvements first made in the original district.

When the drainage commissioners and the board of supervisors found in the year 1917 that the original bond issue of $14,000, plus the 10 per cent. for unforeseen contingencies, was insufficient to complete the system of drainage contemplated in the district, and that the additional sum of $2,500 was needed for that purpose, a new assessment of benefits could have been made against the lands therein, under the authority of chapter 195, Laws of 1912, and amendments thereto, as con-

strued in the case of White et al. v. Lake Cormorant Drainage District, 130 Miss. 351, 94 So. 235, provided the commissioners were of the opinion that the lands would receive additional benefits to those found and assessed in the first assessment thereof, and the board could have levied a tax on such additional assessment for the purpose of paying the bonds in question, but this was not done. Also, the commissioners could have been compelled by mandamus to meet and consider the question of whether the levy of additional benefits was justified, when it was found that the indebtedness incurred by the issuance of such additional bonds of $2,500 exceeded the benefits theretofore assessed. However, their judgment and discretion as to whether benefits had accrued or would accrue additional to those already assessed could not be controlled by the issuance of such a writ, as was held in the case of Anderson v. Robins, supra, where it was said: "Mandamus will lie to require the commissioners to assemble and act. But they cannot be required thereby to make such an assessment of benefits as will be sufficient for the payment of the indebtedness due. . . . . Board of Supervisors v. Lee, 147 Miss. 99, 113 So. 194. It will be their duty to make such an assessment when, but not until, it appears to them, in the exercise of their judicial discretion, that the land is susceptible thereof." Likewise it could have been adjudicated under the authority of Self v. Indian Creek Drainage District, 158 Miss. 7, 128 So. 339, 342, construing chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, that the lands in the added territory would not only be benefited by the cleaning out, deepening, and widening of the drains and ditches embraced in the drainage system of the original district as a proposed improvement under the $60,000 bond issue, as recited in the order of the board of supervisors in connection with this particular bond issue, but that such added territory would also be bene-

fited by the improvements already made in the original district, and an assessment of benefits on account thereof could have then been made on all the lands of the district as extended for the purpose of levying a tax to pay the bonds in question. But such adjudication and assessment was never made, it only having been adjudicated when the bonds of the district were extended that the added territory would be benefited by the improvements proposed to be made out of the proceeds of the $60,000 bond issue, in the matter of cleaning out, deepening, and widening the drains and ditches in the original district, and the extension of the system on and over the lands proposed to be included, and the new assessment of benefits on all the lands of the district as extended was made solely for the purpose of levying taxes to pay the costs of such additional improvements.

Prior to the issuance of the $60,000 of bonds on the lands of the district as extended, the landowners therein were notified of such proposal, and of the assessment of benefits to be made against each separate tract of land on which the taxes were to be levied for the payment of the bonds, and they were given an opportunity to file objection thereto, as well as to the proposed extension of the district. This notice to the landowners of the district as extended constituted the process on which the judgment of the board approving the assessment of benefits and extending the bounds of the district was founded. This process and the judgment rendered thereon met with no objections on the part of the landowners, and no appeal was taken therefrom, with the result that the judgment bound the landowners to pay such taxes only as might be levied on the assessment of benefits then actually made against the lands, and in the absence of an additional assessment of benefits heretofore, or to be hereafter, made on account of the improvements made in the original district several

years prior thereto, this judgment controls as to the limit of the liability of the land for the payment of the indebtedness of the district. All levies of taxes under the drainage laws of the state as heretofore stated are predicated solely and alone upon assessments of benefits previously made, and without which assessment of benefits there is no authority anywhere in any of the provisions of the statutes or decisions of the court for levying a tax for the payment of the costs of drainage improvements.

In the case of Self v. Indian Creek Drainage District, supra, an assessment of benefits against adjacent territory for improvements already made, and the extension of the district to include such lands, was upheld by the court for the reason that there had been an adjudication that the lands in the territory proposed to be added *would be benefited by the improvements already* made, and for the further reason that there had also been *an assessment of such benefits* against such land duly reported by the commissioners fixing the amount of benefits to accrue to each owner, which was approved by the chancery court after due notice to the landowners as required by law. Therefore, the conclusion reached in that case is not authority for appellant's contention in the case at bar, because of the failure in the present case to make an assessment of additional benefits accruing to the lands in the original district, or any assessment on the lands of the district as extended for the improvements paid for out of the funds derived from the sale of the bonds in question, after the benefits originally assessed had been exhausted by the levy and collection of taxes thereon.

It is true that in the Self Case the court said that the funds derived from the assessment of the added territory "are in the same category as funds derived from the assessment against the lands of the original district," but when the opinion in that case is considered

as a whole it is clear that by the above statement the court meant that the funds derived from the assessment of the added territory were to be treated as being in the same category as the funds derived from the assessments against the lands of the original district in the manner of the application thereof to the indebtedness based upon the assessment of benefits made for that purpose.

Under the authority of the statutes and of the cases hereinbefore cited, the commissioners, in co-operation with the board of supervisors, have the authority to make and approve an additional assessment of benefits on all the lands of the district as extended, or on such part thereof as they may find to have sustained additional benefits on account of the work done and paid for by the proceeds of the bonds in question, in addition to those benefits heretofore assessed, if they are disposed so to do, and it is their duty to make such additional assessments and to levy a tax for the payment of such bonds, if it appears to them in the exercise of their judicial discretion that such additional assessment of benefits is justified. But the appellant as holder and owner of such bonds would only be entitled to a writ of mandamus to compel these officials to meet and act in the matter, and is not entitled to the issuance of the writ, as prayed for, to compel them to levy the additional assessment of benefits, and a tax thereon, or to compel them to levy a tax on the assessment of benefits heretofore made.

The judgment of the court in denying the issuance of the writ as prayed for must therefore be affirmed.

Affirmed.