BOARD OF SUPERVISORS OF YAZOO COUNTY *v.* GRABLE.

[72 South. 777.]

1. DRAINS. *Preliminary expense. Reimbursement. Constitutional law. Legislative powers. Delegation. Appointment of engineers. Liability for cost. Interest.*

For the purpose of increasing land values and promoting health, the legislature has power to provide for the creation of necessary drainage districts and to require the counties expected to be benefitted by the improvement to pay at least the preliminary expense regardless of reimbursement.

2. CONSTITUTIONAL LAW. *Legislative powers. Delegation.*

Laws 1912, chapter 195, requiring the chancery court to "apportion all cost between the counties in proportion to the benefits assessed to each county, and such expenses as are incurred prior to the time when such assessment is made shall be apportioned between the counties in the proportion which the chancery court shall deem to be just and equitable," is not a delegation of legislative power, but is a mere detail, necessarily arising after a general scheme to provide for drainage had been adopted by the legislature.

3. SAME.

The legislature cannot delegate its power to make a law; but it can make a law and delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend.

4. DRAINS. *Appointment of engineers.*

Laws 1912, chapter 1915, gives the county no voice in the selection of engineers for drainage districts and when a petition for the appointment of an engineer was presented in the name of petitioners, but none signed in proper person, but by their attorneys for them this was sufficient at least against collateral attack.

APPEAL from the circuit court of Yazoo county.
HON. W. H. POTTER, Judge.

Proceedings on claim of R. L. Grable against the board of supervisors of Yazoo county. From a judgment of the circuit court reversing the action of the board of supervisors in disallowing the claim, the board appeals.

The Big Black drainage district was organized under a decree of the chancery court, and a survey was made of the territory embraced in that district covering several counties, and appellee was chosen as engineer of the drainage district, and incurred considerable expense in making his preliminary survey, part of which was paid by the Federal government, and the balance apportioned by decree of the chancery court among the several counties embraced in the district; the amount apportioned against Yazoo county being $1,438.46. The board of supervisors declined to allow the account when presented and an appeal was taken to the circuit court, which reversed the judgment of the board of supervisors and ordered the account paid. Thereafter the board of supervisors again declined to pay the account and appealed from the decision of the circuit court to the supreme court. The judgment of the circuit court appealed from allowed the appellee the full sum sued for with six per cent. interest thereon from the date of the judgment till paid. The opinion of the trial judge is as follows:

Under the provisions of chapter 195, Laws of Mississippi 1912, more than ten per cent. of the owners of land in a proposed drainage district embracing swamp land subject to overflow from the Big Black river, lying in Holmes, Yazoo, and several other counties, filed their petition in the chancery court of Holmes county, containing necessary description and averments, specifying an engineer and praying for his appointment, and the establishment of the Big Black drainage district. The engineer named in the petition was by decree appointed.

Afterwards there was filed in said cause a supplemental petition signed by the attorneys for petitioners, which set out that the engineer that had been appointed by the court had refused to qualify, and nominated the plaintiff, R. L. Grable, as a competent and suitable engineer, and prayed for his appointment, and there-

after plaintiff was appointed engineer by decree of the
court, qualified, and later made a survey and maps of
the proposed district, and appears to have faithfully
performed all the duties devolving upon him under his
appointment, and as provided in said act.

Later the engineer made full report to the court as
to services rendered and expense incurred, and after-
ward the chancellor by decree apportioned the cost
of the survey amoung the several counties, according
to acreage, and decreed that the same be paid as taxed
against them, out of the general fund, the counties to
be reimbursed by taxes to be assessed against the prop-
erty holders.

The preliminary cost decreed against it was pre-
sented for payment to the board of supervisors of
Yazoo county, and payment refused, by order duly
entered, and from this order, by proper bill of excep-
tions, the plaintiff appeals.

The county contends that unless the district is
finally organized there is no means by which it can be
reimbursed, and this seems true; however, it was in
the contemplation of the legislature that the district
surveyed would be organized and the expense money
refunded to the county. It further contends that the
county had no notice and was not a party to the chan-
cery proceedings, and that to compel it to pay the
charge decreed against it would be taking its property
without legal process.

It seems that, for the purpose of increasing land
values and promoting health, the legislature has power
to provide for the creation of necessary drainage dis-
tricts and to require the counties expected to be
benefited by the improvement to pay at least the pre-
liminary expense, regardless of reimbursement.

In *Jones* v. *Drainage District,* 102 Miss. 796, 59 So.
921, the court said: "A mere reading of the act will
disclose that the two main purposes of the organization
of the districts are to improve the lands embraced

therein for agricultural purposes, and to promote the public health of the inhabitants of that and contiguous territory. While it is true that the financial benefits may be limited to a few landowners, or it may redound to the material interests of many, nevertheless the improvement is for the welfare of the public, and some individuals may derive greater benefits than others. The legislature has decided all these questions, and to the legislature our laws grant this power.''

''When any public work is authorized, it rests with the legislature unless restrained by constitutional provisions, to determine in what manner the means to defray its cost shall be raised. It may apportion the burden ratably among all the counties, or other particular subdivisions of the state, or lay the greater share or the whole upon that county or portion of the state specially and immediately benefited by the expenditure.'' *County of Mobile* v. *Kimball,* 102 U. S. 691, 26 L. Ed. 238.

''The state may impose such a burden where, in the wisdom of the legislature, it is considered that it ought to rest.'' *People* v. *Richmond County,* 20 N. Y. 252.

''To declare a law unconstitutional on the ground that a locality is taxed for what might seem to the court more than its just proportion of an expenditure for a public purpose would be a usurpation of the province of the legislature.'' *Gordon* v. *Cornes,* 47 N. Y. 608; *Hagar* v. *Reclamation District,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

The act does not seem to violate section 14 of our Constitution, and, the cost of the survey having been imposed upon the county by the legislature, notice was not necessary.

It is also contended by the county that the provision requiring the chancery court to ''apportion all costs between the counties in proportion to the benefits assessed to each county, and such expenses as incurred prior to the time when such assessment is made shall be apportioned between the counties in proportion which the chancery court shall deem to be just and equitable,''

is a delegation of legislative authority. This apportionment of cost is a mere detail, necessarily arising after a general scheme to provide for drainage had been adopted by the legislature, and is not a delegation of power within the understood rule.

"The legislature cannot delegate its power to make a law; but it can make a law and delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things, upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation." *Port Royal Mining Co.* v. *Hagood,* 30 S. C. 519, 9 S. E. 636, 3 L. R. A. 841; *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; *Hagar* v. *Reclamation District,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569.

"There is no merit in the contention that the act delegated to the board of supervisors legislative power. The legislature enacted a complete scheme of legislation, providing a method by which landowners may avail themselves of the benefits of the scheme, and the board of supervisors are not authorized to add to or subtract from the law enacted by the legislature. This is so well settled in this and other states, and such laws are so common upon the statute books of nearly all the states, that it is only necessary for us to reaffirm what has already been said before." *Jones* v. *Drainage District,* 102 Miss. 801, 59 So. 923.

It is contended that the engineer's appointment was not in accord with the provisions of the act. After the refusal of the original appointee to qualify, a petition was presented to the court setting up this fact, and praying the appointment of plaintiff. The act gives the county no voice in the selection. The petition was presented in the name of the petitioners, but none signed in proper person, but by their attorneys for them, and I

111 Miss.—57

think this was a valid selection, at least against this collateral attack.

Under this view, the county is liable, and judgment will be rendered accordingly.

On a former day of this court the judgment was affirmed without written opinion, and afterwards a suggestion of error was filed questioning the right of the court to allow interest on the amount of the judgment.

*E. L. Brown, R. R. Norquist* and *Mayes & Mayes,* for appellant.

We are not denying the power of the legislature to provide for the formation of drainage districts. We simply say that it cannot do so, except by due process of law, that it must obey the mandate of the due process clause of the state, and the one of the Federal Constitution, and we say that counties, as well as municipalities, are within those provisions.

Therefore, that it is not competent for the legislature to allow, or direct, the chancery court, or any other court, to contract for, or decree, its money to a private citizen, for public or private benefit, without notice to it on a basis deemed "equitable and just" by the particular judge who happens to be called upon to fix the basis. We insist that, if within legislative competency to expend the county funds for both county and intercounty purposes, it must state the basis, or else, if the judicial function of ascertaining the basis "equitable and just" is to be performed by a court, that the counties must have notice, and that the court is powerless to proceed without notice.

We cite the authorities to show that counties are within the due process clause of the Constitution; all lawyers know that courts proceed upon notice and an opportunity to be heard, when exercising judicial functions, and yet this act provides for the decree of the chancery court of Holmes county, without a day in court, to require this county to pay appellee for work done under contract,

not with its board of supervisors, but with some persons appointed by that court, on a basis deemed "equitable and just" by it.

The county has a proprietary interest in its funds; if the legislature may provide for the disposition thereof, under decree of court, that decree must be rendered upon notice. Its board of supervisors are the constitutional authorities in charge of its funds; they cannot pay out those funds, except upon legislative authority, and the legislature cannot authorize their disbursement on the judgment of a court by it deemed "equitable and just," the county must have a hearing on the question. Otherwise, its funds are disposed of without due process of law. If the legislature may so appropriate county money, then it is a legislative function, and our third point comes into play.

Here, again the governor is hopelessly at sea, in that he, in the attempt to evade the proposition, likens the function to be performed by the court to that of allowing accounts of its officers, expenses incidental to a court term rewards for the capture of fugitives, "and the like," all of which are purely and administrative duties connected with the judicial duties, except that of allowing the reward for the arrest of a fugitive, which is not binding upon the county, until a regular hearing and judgment, after presentation to the board and its disallowance, but serves merely as a justification for the expenditure by the board and as to which, it will be perceived, the county has its day both before its board and the court, with the right of appeal to this court. Even in this case, a hearing for the county is preserved.

The fixation of this charge upon the county funds is a legislative or a judicial function. It can't be both. If a judicial one, as we have said, it must be exercised upon notice; if a legislative one, it cannot be delegated to the courts, or by them exercised. This, we hope, is plain; we think it is, but the governor confounds us again, and his citations are no answer to our position. We are not

contending that the court, or a board of commissioners, or any other designated authority may not perform the functions, of organizing a drainage district. The courts certainly may exercise the judicial functions incident to the determination of the right of citizens, under a law complete in its terms, to so organize, and we deny no such right; and yet the governor quotes authority like this:

The details of the laws may be different; the agency employed by the state to carry the laws into effect may differ, but this in no wise affects the constitutionality of the law. The fact that under some laws the county courts are charged with the duty of carrying the laws into effect, while in others commissioners are provided for the purpose, and in others the people themselves are empowered to organize into incorporations called "drainage districts," makes no difference.

We are not complaining that the legislature has said the court shall ascertain the existence of a state of facts, under which the legislature has said a given law, complete in its terms, shall be put into effect, or that it shall, after ascertaining the existence of such facts, put any law into effect; we complain of the delegation of the legislative power (conceding for the sake of the argument, that the power exists), to determine the basis upon which county funds shall be appropriated, in putting a law into effect. Let us not be misrepresented, or misunderstood; we do not complain that the drainage district is being formed by the court; in this connection, we do not complain that money is being spent for that purpose; nor in this connection, do we complain that it is spent under decree of the court; but we do complain that the legislature has delegated to the court the legislative power to determine upon what basis the funds of this county are to be expended for that purpose.

True enough the act provides and may legally provide for the ascertainment of the existence of a state of facts by the court; that under such state of facts and

upon certain contingencies—the presentation of petitions, etc.,—the court may decree the organization of a drainage district; none of which do we complain of as the delegation of legislative power. What we complain of is the delegation of the legislative power to determine what proportion of costs we shall pay, granting for the sake of the argument in this connection, that the legislature might have said we should pay upon any basis it saw fit to prescribe.

If the legislature might have adopted any one basis or another, that was because it had that legislative power; if it had such power, the court had not, and it cannot be delegated by the one, or exercised by the other.

In our original brief, we neglected to call the court's attention to, and complain of, the fact that the judgment is made to bear interest. We do so now.

The cases of *Board* v. *Klein*, 51 Miss. 816, and *County* v. *Chickasaw Co.*, 64 Miss. 544, are decisive on this question, the one being a demand of an individual against a county, and the other being a demand of one county against another, the former being especially decisive.

*E. F. Noel,* for appellee.

1. The Law of 1912, chapter 195.

The contention of appellant that one mode of apportionment of expenses of preliminary survey is provided in case the district be organized, and another in the event it is not organized, is unsound. The law provides, section 1, page 213: "All expenses incident to the survey, and the cost of publication shall be paid by the county as the work progresses upon proper showing . . . and the chancery court, or the chancellor in vacation, shall apportion all costs between the county or counties, in proportion to the benefits assessed to each county; and such expenses as are incurred prior to the time when such assessment is made shall be apportioned between the

counties in the proportion which the chancery court or chancellor in vacation shall deem to be just and equitable.''

This clearly places the obligation of payment of preliminary survey on the different counties, to be paid by them as the work progresses in proportions fixed by the chancellor. Whether or not the counties can obtain reimbursement from the property-holders chiefly benefitted, is an entirely independent and separate proposition, and not now before the court. If Yazoo county had paid its *pro rata* of the preliminary survey, publication would have been made and the question of permanent organization settled two and a half years ago, by the parties concerned. Yazoo's default blocked such determination. If permanent organization be defeated, Yazoo was the chief instrumentality in its defeat, and cannot plead its own action in effecting this defeat, as a discharge of the liability otherwise accruing.

There is nothing in the record to show that the people and board of supervisors of Yazoo county were not fully advised of every step taken in the organization and work incident to the preliminary survey. The city papers and most of the county papers gave full account of this work; and one of Yazoo's leading citizens was one of the commissioners.

2. Constitutional objections only available to parties immediately concerned.

That proposition is not controverted in the case cited by appellant in support of this proposition, *Tide-Water Co. v. Coster,* 90 Am. D. 634, but is directly upheld by many decisions of the supreme court of the United States, cited in 4 Ency. of U. S. Supreme Court Reports, 73-4, following the statement: ''In order to maintain an action or suit, they must establish that they have an actionable interest in the constitutional rights which they seek to protect.'' The same doctrine has been held in this state. *Coleman* v. *Carr,* W. 258; *Dejarnett* v.

*Haynes,* 23 Miss. 600; *Natchez & C. R. Co.* v. *Crawford,* 55 So. 596.

3. The chancellor's apportionment of cost of preliminary survey is not unconstitutional.

*State* v. *Barker,* 93 Am. St. Rep. 232-3, the leading authority relied upon by appellant, utterly refutes appellant's contention on this point, as shown by the following extract from that case. "Of course, the act itself need not be judicial in character. If the general power be judicial, or if the act itself be in aid of some judicial function, it is sufficient. Thus the exercise of judicial power may be essential in discharge of executive functions. (Citing authorities.) And courts in the discharge of their duties, may be required-to exercise executive or administrative powers. They may be authorized to make contracts to keep court rooms in repair." (Citing authorities and other classes of duties.)

Among powers of this sort, in this state, are the allowance of court accounts, and payment of expenses incidental to the court, allowance of rewards for capture of fugitives after homicides, and the like.

One of the authorities largely relied on by appellant, *Cox* v. *Wallace,* 100 Miss. 536, holds: "The supreme court of the United States in the case of *Hager* v. *Reclamation District,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, in upholding the right of the state to create drainage districts, used the following language: 'It is not open to doubt that it is in the power of the state to require local improvements to be made which are essential to the health and prosperity of any community in its borders. To this end it may provide for the construction of canals for draining marshy and malarious districts, and levees to protect against inundations, as well as for opening the streets in cities and of roads in the country. . . . Such authority may be lodged in any board or tribunal which the legislature may designate.' See, also, *Mound City, etc.* v. *Miller,* 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727."

In that case the court further held quoting from *Mound City* v. *Miller:* "The details of the law may be different, the agency employed by the state to carry the laws into effect may differ but this in no wise affects the constitutionality of the law. The fact that under some laws the county courts are charged with the duty of carrying the laws into effect, while in others commissioners are provided for that purpose, and in others the people themselves are empowered to organize into corporations called 'drainage districts,' makes no difference." Ib. 538.

4. Preliminary notice not constitutionally necessary.

The Code provisions, sections 371-391, investigated and upheld by the court, in *Cox* v. *Wallace,* 100 Miss. 542-3, did not require notice of preliminary steps to organization of the district. Probably because until preliminary steps are taken and some survey made, it cannot be known what persons or land ought to be embraced, and are affected. The court there held the preliminary notice is not required, saying:

"In 2 Cooley on Taxation (3 Ed.), pp. 1238 and 1240, citing many authorities to support the tax, the author says: 'The right of the taxpayers to be heard at some proper stage of the proceedings is as clear in the case of this species of taxation as any other,' but 'it is enough if those who are to bear the burden have a right to be heard before the assessment becomes a final lien upon their property.' It is not necessary for the taxpayer to have notice of every preliminary proceeding, if at the end and before final liability he may have an opportunity to object to all." See, also *Wilkinson* v. *Lee,* 96 Miss. 688, 51 So. 718.

However, this is not a question of the right to collect tax by the board for reimbursement, but a question of the authority of the legislature, and of the courts in pursuance thereof, to create a legal demand against county funds for a public purpose beneficial to the county, and within the state's police powers.

SMITH, C. J., delivered the opinion of the court.

Suggestion of error will be sustained, judgment heretofore entered will be set aside, and, since appellant is not chargeable with interest, the judgment of the court below will be reversed, and judgment rendered here in the exact language of the judgment rendered below, except that the words "with six per cent. interest thereon from this date" will be omitted.

*Reversed.*