GILMORE-PUCKETT LBR. CO. v. BIG BROWN'S CREEK DRAINAGE DIST. NO. 2

In Banc. Oct. 10, 1949.

No. 37187' (42 So. (2d) 226)

Brown & Elledge, for appellant.

**J. Sidney Finch,** for appellee.

**Hall, J.**

Appellee was duly organized as a two-county drainage district in the year 1918 pursuant to the provisions of Chapter 269, Laws of Mississippi of 1914. In the years 1919 and 1920 the proposed improvements were made, an assessment of benefits against the lands in the district was made in the amount of approximately $43,000, all funds raised by this assessment were expended and the assessment of benefits was exhausted in 1920. Since then there has been no further assessment of benefits against any of the lands in the district.

In 1947 some informal meetings of persons owning lands within the district were held. Appellant had no

notice of and was not represented at these meetings, notwithstanding the fact that it owned 855 acres of the approximate 3,000 acres in the district. Pursuant to the sentiment expressed by most of those in attendance at these meetings the drainage commissioners employed engineers and an attorney. The engineers made a survey of the drainage district, determined what improvements should be made and submitted an estimate of the cost thereof in the amount of approximately $45,000.

The drainage commissioners thereupon filed their petition in the chancery court, together with the engineers' report, and prayed for an assessment of benefits against the lands of the district in the amount recommended by the engineers. Notice of the hearing of this petition was given and in due time the appellant and others filed protests and objections thereto, as a result of which a consent decree was entered on February 3, 1948, dismissing the petition without prejudice.

In April 1948 the drainage commissioners of the district filed a petition in the chancery court alleging that they had incurred expenses in connection with said proceedings in the total amount of $2,032.95, being $1,143.70 for engineering services, $389.25 for printers' fees, and $500 for attorney's fees; that by proper authority of the court they had borrowed $1,800 to apply on these expenses and they prayed for a levy of seventy cents per acre upon all lands in the district for the purpose of meeting these obligations. Appellant filed its protest and objection thereto and after a hearing thereon the chancellor entered a decree making a levy of seventy cents per acre upon all lands in the district and directing the sheriffs of the two counties involved to collect the same. From that decree this appeal is prosecuted.

The aforesaid acreage levy was made without there having been any assessment of benefits against any of the lands in the district, and approximately 28 years after the original and only assessment of benefits had

been exhausted. About one-half of the estimated cost of the proposed improvements was for the construction of an entirely new drainage canal and the remainder was for widening, deepening, and improving the existing canals.

Appellee contends that the levy of an acreage tax by the Chancellor without a previous assessment of benefits is authorized by Section 4685, Mississippi Code of 1942, while appellant contends that that statute applies only to the payment of preliminary costs and expenses in those cases where there has been a preliminary organization of a drainage district in which the proposed program was abandoned without there having ever been any permanent organization of the district or any assessment of benefits against the lands of the proposed district. Said Section appears in Chapter 159 of the Laws of 1918 which deals entirely with the creation of new drainage districts, the appointment of commissioners thereof, the employment of engineers and an attorney, the cost of necessary material and supplies and publications and printing in connection with the preparation and submission of plans and specifications for the improvements proposed to be constructed, and the borrowing of money by the commissioners necessary to pay said costs, and the section then provides that ''If, for any cause, the improvements shall not be made, said costs shall be charged on the real property in the district, including railroads, if any, and shall be raised and paid by assessments in the manner hereinafter described; or, in the event said assessments are not made, or the improvements shall not be completed, or the same be abandoned, for any cause, after such indebtedness is incurred, the board of supervisors of the county in which the drainage district is located shall levy an acreage tax, or an ad valorem tax, on the lands in said proposed drainage district to pay such indebtedness. . . .'' The act then provides that if the lands of the ''proposed dis-

trict'' lie in more than one county, then the chancery court shall apportion ''said indebtedness'' between the several counties and the boards of supervisors of the several counties shall levy such apportioned tax upon the lands of their respective counties in accordance with the ruling of the Chancellor. The said Chapter 159, Laws of 1918, with some minor changes, appears in the 1942 Code as Sections 4680-4686, and it is quite clear from both the original act and the cited sections of the Code that the legislature was dealing only with the creation of new districts and that in Section 4685 ''the improvements'' refers to the improvements proposed to be made in the new district, ''said costs'' refers to the cost incurred in getting up the proposed plan of improvements for the new district, ''such indebtedness'' refers to the indebtedness incurred in connection with the organization of the new district and the preparation of the proposed plan of improvements therefor, and the authorization for the levy of a tax without a previous assessment upon the lands ''in said proposed drainage district'' indicates that the whole section deals only with the situation created when a new district is proposed or commenced and then abandons and fails to construct the proposed improvements therein. ██ In this case we are not dealing with a proposed district that was not created or a newly created district whose proposed plan of improvements has been abandoned and in which no improvements have been made; on the contrary we are dealing with a district created about thirty years ago whose plan of improvements was adopted and constructed and which had assessed the benefits thereof upon the lands of the district and had completely exhausted that assessment about twenty-nine years ago, and which has recently initiated another program of improvements which has been abandoned without the assessment of any additional benefits, and in our opinion neither Section 4683 nor Section 4685 of the 1942 Code authorizes

the borrowing of money to pay the expenses incident thereto. Section 4704 of the 1942 Code authorizes the borrowing of money by the drainage commissioners but specifically provides that the same shall not exceed "in amount the total amount of benefits assessed against all the real property in the district." Section 4713 of the 1942 Code provides that the drainage district shall not cease to exist upon completion of its drainage system but shall continue to exist as a body corporate for the preservation of the system of drainage and authorizes the borrowing of money for that purpose, but Section 4718 of the 1942 Code provides that the evidences of indebtedness shall be a lien on the lands of the district "in an amount not to exceed the amount of benefits assessed against such lands" and Section 4719 pledges the revenues of the district as well as all real estate subject to taxation in the district for the payment of both principal and interest "in an amount not to exceed the amount of betterments assessed against said lands." Thus it is seen from our statutes on drainage districts that except as provided by Section 4685 the drainage commissioners have no authority to borrow money in excess of the amount of benefits or betterments assessed against the lands of the district, and in this case the commissioners borrowed money at a time when there was no assessment of any benefits outstanding against the lands of the district.

In the case of Clark v. Pearman, 126 Miss. 327, 88 So. 716, 717, there was involved an attempt to issue bonds of the Lead Bayou Drainage District in an amount exceeding the benefits which had been assessed against the lands of the district, and this court, after quoting from the foregoing statutes, said: "As it appears to the court, there is no escape from the conclusion that under this statute no indebtedness of any character can be incurred, the principal and interest of which will amount to more than the assessed benefits of the district. The plain pur-

pose of the Legislature appears to have been to set aside and pledge alone the assessed benefits for the payment of any and all obligations of the district, including principal and interest, beyond which assessed benefits there was to be no liability whatever of either the district or the landowners thereof.'' See also Anderson v. McKee, 182 Miss. 156, 179 So. 858; Anderson v. Robins, 161 Miss. 604, 137 So. 476; and People's Bank Liquidating Corp. v. Beashea Drainage District, 199 Miss. 505, 24 So. (2d) 784.

Appellee argues that if Section 4685 does not authorize the levy which was made in this case, then authority therefor is found in Section 4713 of the 1942 Code which charges the commissioners with the duty of preserving and maintaining the district's system of drainage. In construing that statute this court held in the Beashea Drainage District case, supra, and in White v. Lake Cormorant Drainage District, 130 Miss. 351, 94 So. 235, that the commissioners have the right, within the limitations therein set out, to assess additional benefits against the lands of the district, but the trouble with appellee's argument is that in this case there was levied a flat acreage tax against the lands without the previous assessment of any additional benefits. Such an assessment is necessary before there can be a levy of taxes or an incurring of indebtedness to pay for such additional benefits. Consequently the decree of the Chancellor is erroneous and the same will be reversed and a decree here entered dismissing the petition without prejudice.

Reversed and dismissed without prejudice.