MOORHEAD DRAINAGE DIST. *v.* PEDIGO.

In Banc. Dec'. 18, 1950.

No. 37654 (49 So. (2d) 378)

Allen & Allen, and Forrest G. Cooper, for appellant.

Farish & Keady and Lyon & Davis, for appellee.

Ethridge, C.

The Moorhead Drainage District, situated in Sunflower County, Mississippi, was created in 1912. Miss. Laws of 1912, Chapter 195. It is a corporate political subdivision with local commissioners. Miss. Code of 1942, Sec. 4675 et seq. Moorhead Bayou is a deep, natural draining channel, which carries the water from the District into the Quiver River, furnishing the outlet for the waters of the District. The District originally contained 14,990 acres, but only 13,720 acres were assessed originally for

benefits. Shortly after its creation there was assessed against the stated lands in the District under a chancery court's decree benefits and betterments in the amount of $146,436.55. The original bond issue at that time was in the amount of $80,000.00, and two later ones were about $25,000.00 each, making a total of $130,000.00.

Since the District was organized it has lost lands by sales to the state for delinquent taxes and by incorporation of some territory into the Town of Moorhead. Hence the basis of its original assessed benefits was reduced to $137,336.73. Prior to 1932 the original bond issues had been paid off from taxes levied by the District against these assessed benefits. The aggregate of the original bond issues, interest on them, and other costs consumed the entire original assessed benefits. According to a stipulation filed herein by all counsel, all of the original assessed benefits of the District, serving as the basis of the taxing power of the District, had been consumed at the time the District made the engineering contract with R. H. Pedigo, appellee.

Early in 1937 the three Commissioners for the Moorhead Drainage District were desirous of having an engineering survey made of the District's lands in order to see what was needed to be done to repair and reclaim the canals and channels of the District, and how much such a project would cost. At the request of the Commissioners of appellant Drainage District, appellee, on June 9, 1947, made a written proposal to the District on the cost of his services as consulting engineer for a reclamation project. By letter, appellee proposed to make a "preliminary survey, reports, estimates, specifications, notices to bidders, advertisements of contracts, forms for contracts, forms for surety bonds, and all other necessary data preliminary to the letting of the contract for the construction of clean-out work on approximately 30 to 35 miles of drainage canals, including Moorhead Bayou, for five per cent of the estimated bond prices for the work . . . ." Appellee also proposed to do "all the preliminary work as outlined above, and further to set the construction

stakes, grades, slopes, keep field notes, progress reports, and make up estimates for the contractor on monthly intervals until work is finished, and follow with any inspections that are necesary during the time.'' He also proposed: ''I further propose to furnish advice in the preparation for bond issue, for the selection of bidders, advertisements, and the letting of contracts; and to carefully protect the Moorhead Drainage District's interest during the life of the contract. This second phase of my employment will justify another 5% fee based on the actual cost of the project. (Please note that the first phase of the preliminary work of 5% is based entirely on estimated costs, and the additional 5% noted in the second phase is based on the actual cost of the project).''

On June 13, the Commissioners accepted appellee's offer by a resolution entered on their minutes. The next day the contracting parties, at the request of the attorney for the District, agreed to add to the employment contract the following clause: ''Upon completion of the preliminary work hereinafter referred to, and the payment therefor by the District, the plans and specifications will become the property of the District, and the District is not obligated to proceed with the second phase of the work.''

After execution of the contract, appellee spent several months making an engineering survey for the reconstruction of the District by repairing its existing drains. At times he had two field parties working, and some of them would have six or seven men cutting lines. These men were employed and paid by appellee for this job, although under the contract the District agreed to ''reimburse the engineer for the field party working at the rate of $35.00 per day, to be deducted from the total amount on completion and submission to the Commissioners, of the preliminary engineering data . . . .''

On April 27, 1948, appellee submitted his preliminary engineering report. The total estimated cost for the work recommended by him was $159,868.41. On the basis of that estimate, appellee's five per cent fee was

$7,993.42. On May 4, 1948, the Commissioners of appellant by resolution accepted appellee's report as "in accordance with the contract heretofore entered into by Commissioners with said engineer", and ordered the payment of $2,500.00 to be made to appellee "to apply to the fee of the said R. H. Pedigo under said contract." The $2,500.00 accordingly was paid to appellee, leaving a balance due him under the contract of $5,493.42.

The three Commissioners who were in office at the time the report of April 27th was made testified that they thought the estimate made in it was not excessive and that it recommended needed reclamation work, but that the District could not "accumulate that much money", and it was "too big a burden on the District to spend that much money." Hence the Commissioners requested appellee to bring in another engineering report on a project requiring less work. Pedigo then made a suggested report of a project estimated to cost $26,000.00, which was adopted by the Commissioners. On May 12, 1948, they petitioned the chancery court for authority to borrow that sum and to levy in that amount additional benefits against the lands of the District. The chancery court authorized $26,000.00 of additional assessments, but that decree was reversed by this Court because of failure to make parties to the District's petition the owners of lands outside the District who would be benefited by the improvements. Hobbs v. Moorhead Drainage District, 1949, 205 Miss. 679, 39 So. (2d) 307.

In April, 1949, the three Commissioners for the District were changed, and the District refused to pay appellee the balance of his contract price for the engineering survey, being $5,493.42. Subsequently, in September, 1949, upon the petition by the District, the chancery court authorized the District to make additional assessed benefits of $50,000.00, and to sell $50,000.00 of new bonds to defray the cost of the proposed reclamation work, under specified conditions. The decree with a few modifications was affirmed in Moorhead Drainage District v.

Jackson, 1950, 208 Miss. 594, 45 So. (2d) 234, but is not involved herein.

On July 26, 1949, appellee, R. H. Pedigo, filed a declaration in the Circuit Court of Sunflower County, Mississippi, in which he set up the employment contract with the District and the partial payment which had been made to him by the District. He prayed for judgment in the amount of the balance, $5,493.42, together with interest and costs. In its answer the District alleged that the estimated cost of the project was ''unreasonable, impractical, excessive, and unlawful, and was rejected by defendant . . . .'' The District further charged that under the contract Pedigo was to make his study and report back to the Commissioners for their approval or rejection, and that his estimate was a mere recommendation, and any fee owed him at all must be based upon the second estimate of $26,000.00. Defendant said that an estimated cost contract is beyond the powers of the District and is against public policy. It averred that it was further unlawful because the District had already consumed all of its assessed benefits and had no power to make a contract in excess thereof.

The trial court heard several witnesses for both parties on the issues of the preliminaries to the making of the contract and the details of the work done by appellee. The court excluded from the evidence testimony as to the financial ability of the District to perform the proposed work, and as to whether at the time of the execution of the contract and of the trial the District had consumed its assessed benefits, on the ground that the same was not relevant to the issue of liability vel non under the contract. After hearing witnesses for both parties, the court granted a peremptory instruction for the plaintiff—appellee, R. H. Pedigo, and entered a judgment in the amount of the aforesaid balance due under the contract.

By a stipulation filed in this Court, by agreement of counsel and the Court, the Drainage District, on June 13, 1947, the date of the contract with Pedigo, had no

remaining unused assessments and benefits. However, at that date the amount of money in the treasury of or otherwise owned by the District was $5,936.72. The sum was subject to obligations incurred by the District prior to that date of $809.00, leaving a net balance in the treasury of the District on the date when the contract with Pedigo was made of $5,127.92.

This appeal involves one major question, namely, whether the contract was within the powers of the District. This concerns primarily the problems of whether a drainage district with local commissioners has the power to make, many years after its original construction, an engineering contract for a survey of proposed reclamation work on the District, and if so, whether the amount of unused benefits and funds derived from authorized benefits are a limitation upon that contracting power. This requires a consideration of the nature of a drainage district and the relevant statutes and cases. ██ ██ Such a district is a subdivision of the state government, of limited jurisdiction and powers, which are limited by the statutory grants.

Section 4675 of the Mississippi Code of 1942 establishes the procedure for the original creation of a district and authorizes the employment of an engineer and the borrowing of money by the district being created for the purpose of paying him. Supplementary to that statute is Section 4683, also authorizing a district in the process of creation to borrow money to pay for an engineer's services. In Gilmore-Puckett Lumber Co. v. Big Brown's Creek Drainage District No. 2, 1949, 207 Miss. 316, 42 So. (2d) 226, it was held that these statutes refer solely to the method of financing such costs in the original creation of the district. Code Section 4685 permits the payment of engineering costs for a district where the proposed improvements are not actually made, by the levy of an acreage or ad valorem tax by the county board of supervisors. The Gilmore-Puckett case limits the application of that section also to the original creation of a district. Code Section 4686 provides for a method of

paying engineering expenses where a district was undertaken to be created, the engineer made his surveys and the improvements were abandoned, and afterwards proceedings were reinstituted for the doing of the proposed work covered by the engineer's earlier surveys. Such costs "shall be paid for as a part of the subsequent proceedings in which such . . . surveys . . . are used." This appears to refer to the procedures and limitations of Sections 4675 and 4683. And Section 4745 provides a method of paying engineering expenses where the boundaries of an existing district are extended.

Section 4681 grants the commissioners powers not inconsistent with the article on local commissioners. It gives them the power to "appoint such other officers, agents, and attorneys, and employ such persons, as they may think necessary for the efficient management of their business . . . .." Section 4676 gives districts a power to contract, but this is limited by other boundaries upon their powers. See also Section 4739.

Code Section 4752, in the article on districts with local commissioners, provides that all of the provisions in the entire code chapter on drainage districts which are not contained in that particular article and which do not conflict with any provisions concerning districts with local commissioners, shall apply to the latter type of districts. Section 4609, in the article on drainage districts with county commissioners, gives the commissioners the power to repair and protect the drainage system in perpetuity, makes it their duty to do so, and permits them to borrow money "in anticipation of the collection of already levied taxes not to exceed in any one fiscal year 1 per cent of the amount of the benefits assessed against all of the real property in the district . . . .." The power to make repairs is here granted, as well as the same being made a duty, but this power presupposes the existence of either unused benefits or funds derived from taxes levied and assessed against authorized benefits.

None of the foregoing statutes expressly grant a

district power to make a contract of the present sort with an engineer for a survey. But they make it clear that maintenance and reclamation work are equally as important as the original construction project. This is further indicated by the provisions authorizing the assessment of additional benefits. Code of 1942, Sections 4713, 4689. Hence, construing these statutes along with Section 4728, which directs a liberal construction of them to promote the purposes of reclamation, we think that drainage districts have the implied power to contract for engineering surveys precedent to engaging in a reclamation project. This is also in accordance with sound business and engineering practice.

However, there is implicit in all of the legislation concerning drainage districts a basic limitation on the district's power to make such a contract. That is that any obligation incurred by such a contract must not exceed the amount of the unused benefits and betterments assessed against the lands of the district, and the funds derived from authorized benefits and betterments. This limitation is implicit in all of the statutes and cases defining the powers of drainage districts to assume and issue monetary obligations of the district. Nor do we think that in this respect there is any distinction between a monetary obligation assumed by a district in an employment contract for an engineer and a certificate of debt, a promissory note, or a bond. In fact, if there were no such limitation, a district's power to make a contract of this type might be unlimited, except by some vague standard of reasonableness.

Code Section 4695 authorizes the chancery court to assess benefits for improvements, and provides that such assessments constitute a lien on the land in the district "in an amount not to exceed the total amount of estimated benefits . . . ." A similar provision exists in Section 4701, authorizing a new tax to be levied in case there is a deficiency of funds to complete the improvements. Section 4704 authorizes issuance of district bonds "not exceeding in amount the total amount of benefits

assessed against all the real property in the district
. . .." Section 4713 directs the commissioners to main-
tain the district, to keep its canals clear from obstruc-
tions and to apply for additional assessments upon the
benefits for those purposes. Section 4718 provides that
all bonds and evidences of indebtedness issued by the com-
missioners shall be a lien on all lands in the district "in
an amount not to exceed the amount of benefits assessed
against such lands . . . ." And Section 4719 pledges
the entire revenues of the district to secure the payment
of the district's bonds "in an amount not to exceed the
amount of betterments assessed against said lands . . . ."

These statutory limitations have been applied strictly.
In Clark v. Pearman, 1921, 126 Miss. 327, 88 So. 716, 717,
the district was denied any power to issue bonds in ex-
cess of its assessed benefits. It was said that under the
statutes "no indebtedness of any character can be in-
curred, the principal and interest of which will amount to
more than the assessed benefits of the district". To the
same effect is People's Bank Liquidating Corp. v. Beashea
Drainage District, 1946, 199 Miss. 505, 24 So. (2d) 784.
In the recent case of Gilmore-Puckett Lumber Co. v. Big
Brown's Creek Drainage District No. 2, supra, the drain-
age commissioners employed an engineer for the purpose
of doing work in connection with a reclamation project.
All of the funds raised by the original assessment of
benefits had been exhausted. As a result of protests,
a petition for additional assessments was dismissed,
but the chancery court authorized a levy of an acreage
tax to pay the engineering fee. On appeal, the court re-
versed and dismissed the case, and held that the "com-
missioners have no authority to borrow money in excess
of the amount of benefits or betterments assessed against
the lands of the district, and in this case the commis-
sioners borrowed money at a time when there was no as-
sessment of any benefits outstanding against the lands
of the district". There must be a previous assessment of
additional benefits, and "such an assessment is neces-
sary before there can be a levy of taxes or an incurring

of indebtedness to pay for such additional benefits."
[207 Miss. 316, 42 So. (2d) 228.]

 ██ Applying the foregoing principles, and assuming that the funds in the treasury or otherwise owned by the District at the time the contract was made were derived from taxes levied and assessed against benefits in the District, the appellee's contract is valid and enforceable against the District in the amount of such cash funds not subject to claims of precedent creditors, $5,127.72. Since appellee has already been paid $2,500.00 on that amount, we will affirm the judgment of the trial court with a remittitur of the judgment below to $2,627.72.

Relevant to the result reached herein is Anderson v. McKee, 1938, 182 Miss. 156, 179 So. 858, 859. A bondholder had sued for a writ of mandamus against the commissioners of a drainage district to compel them to meet and levy a tax on the assessment of benefits on all lands within the district. The Court said that the aggregate amount of the existing bond issues exceeded the total assessed benefits by $5,454.00, and "to that extent the bonds were void under the decision of Clark v. Pearman . . . ." However, a validating statute had ratified the remaining bonds as an obligation of the district. The effect of this curative act was only to render the bonds a corporate obligation of the district, but it did not create a lien upon the lands of the district. In the case now under appeal, there was no validating statute, but the contract would be valid *pro tanto* to the extent the District has funds derived from assessed benefits.

In Anderson v. Robins, 1931, 161 Miss. 604, 137 So. 476, 478, a contractor with a drainage district sued on promissory notes issued to him by the district. The contract price exceeded the assessed benefits by about $5,000.00. It was contended that the commissioners were without power to contract a debt in excess of the assessment of benefits to the lands of the district, but the Court found that it was unnecessary to decide that question, because a curative statute had validated the debt. This

act was upheld in view of the fact that it did not impose upon the land liability in excess of the benefits accruing thereto. The Court held that if the additional assessment was not sufficient to pay the contractor's debt, his judgment, "to the extent of such insufficiency, will be unenforceable." In the present case there is no curative statute, but the principle of *pro tanto* liability to the extent of the existence of funds derived from assessed benefits is analogous.

Appellant argues several other points which have no effect on the above result. It suggests that an "estimated cost" contract of this sort is against public policy, because the "sky is the limit" on such an estimate. However, the evidence shows that appellee's estimate was reasonable, and no proof is made of fraud by appellee. Such a contract seems to be a customary method of ascertaining the compensation of an engineer or architect. 6 C. J. S., Architects, Section 16; 17 C. J. S., Contracts, Sections 362, 367, C(2)(b). See also Code Section 8805 requiring political subdivisions to employ engineers under stated circumstances. An estimated cost contract may well be an undesirable one from the point of view of a governmental subdivision, but that is a matter for the legislature to determine.

The judgment below awarded appellee interest at the rate of six per cent from the date of the judgment, September 8, 1949, until paid, together with court costs. Appellee also says that we should assess five per cent damages against appellant Drainage District under Code Section 1971. ■■ Interest is not allowable in a judgment against a drainage district. Board of Supervisors of Yazoo County v. Grable, 1916, 111 Miss. 893, 72 So. 777; Jones Bayou Drainage Dist. v. Sillers, Clark & Sillers, 1922, 129 Miss. 13, 91 So. 693. In those cases the Court held that Section 1971 does not authorize the assessment of interest on a judgment against a drainage district. ■■ Even less reason exists to extend to such districts the statutory provisions of Section 1971 con-

cerning five per cent damages. The latter is a penalty upon an unsuccessful litigant, and has always been strictly construed. It has long been well settled that a subdivision of the state is not liable for costs unless the statutes expressly so allow or provide. This general rule was recognized by the Court in State Highway Commission v. Mason, 1941, 192 Miss. 576, 596, 4 So. (2d) 345, 6 So. (2d) 468. However, an exception was made in that case as to the State Highway Commission where there was involved the self-executing provisions of Section 17 of the Mississippi Constitution of 1890, dealing with the taking of private property and due compensation, and the particular statutes of that agency. That exception is not applicable to drainage districts and does not eliminate the general rule stated above.

For the above reasons, the judgment of the circuit court is affirmed, with a remittitur of that judgment to the sum of $2,627.72, and of the interest and costs stated therein.

Affirmed with remittitur.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.